Time Sales Finance Corp., Appellant, *v.* Boyd.

Argued October 4, 1957. Before RHODES, P. J. HIRT, GUNTHER, WRIGHT, WOODSIDE, ERVIN, and WATKINS, JJ.

*M. E. Maurer,* with him *Samuel C. Nissenbaum* and *Wexler, Mulder & Weisman,* for appellant.

*Kenneth Cooper,* for appellees.

OPINION BY WATKINS, J., January 21, 1958:

This appeal was taken from an order of the court below opening a judgment entered by the plaintiff ap-

pellant on a single bill bearing the signatures of four defendants, as comakers, two of them being the appellees herein.

In July, 1956, the defendant William H. Beckett was negotiating with the appellant for a loan of Seven Hundred ($700) Dollars to go into the restaurant business. This loan was made without security.

Beckett, needing additional money, sought to increase the amount of the loan and the appellant refused any increase unless security was given. Beckett, then told the appellant company that Ernest Boyd and Lillie Boyd, his father and mother-in-law, the appellees, would provide the necessary security. Beckett then took a judgment note, provided by the appellant company and had it signed by the Boyds, and the Becketts as comakers. This note was in the amount of Thirty-five Hundred ($3500) Dollars, upon which judgment was entered under the confession clause on August 11, 1956.

In November, 1956, payments on the note being in default, the defendants were notified and a meeting held between Ernest Boyd, William L. Beckett and the appellant in the company's office. The appellee, Ernest Boyd, states that he then informed the appellant that he never agreed to secure his son-in-law for $3500 but that the amount should have been $700. He did, however, induce the appellant to extend Boyd more time to develop his business so that he might possibly pay the note. Beckett apparently failed in the business and left the area early in February, 1957.

On February 11, 1957 the Boyds filed a petition to open the judgment, alleging as a defense, that the note, on which the judgment was entered, had been executed in blank by them and that it had been completed in excess of the authority given to William Beckett, that

is, for $3500 instead of $700, the amount they say Beckett told them the note was for.

An answer was filed, alleging that the note, at the time it was executed, was complete in every detail. Depositions were taken and on March 13, 1957, the rule to open was made absolute.

A rule to show cause why execution should not issue for $700 was filed by the appellant and answer made thereto. This rule was discharged by the court below and as we find there was error in the order to open the judgment, this question will not be discussed.

A petition and rule to open a judgment entered upon a warrant of attorney is an equitable proceeding, addressed to the sound discretion of the court and to be disposed of in accordance with equitable principles. However, a mere conflict of evidence is not sufficient to open a judgment. *Kienberger v. Lally,* 130 Pa. Superior Ct. 583, 198 A. 453 (1938).

The petition to open judgment and the supporting depositions must show the existence of a meritorious defense. Where fraud is alleged, as here, as such meritorious defense, then the moving party's evidence must be clear, precise, and indubitable. See *Nissenbaum v. Farley,* 380 Pa. 257, 263, 110 A. 2d 230 (1955).

The Boyds admitted that they signed a judgment note in blank at the instance of their son-in-law, Beckett. They signed it in blank because they had confidence in him and trusted him and they conceded they did so to enable him to borrow $700.

The Boyds charge that a fraud was committed on them but neither in their petition nor in their depositions do they charge the appellant with it. They claim they executed a blank instrument. An examination of their depositions as to what they say was on the note and what they say wasn't on the note at the time they signed it, discloses inconsistencies that go beyond their

alleged ignorance and inability to read. Their testimony, if not incredible, certainly is not the clear, precise, and indubitable evidence the law requires to support the lower court's exercise of sound discretion in opening the judgment.

The testimony of the appellant's stenographer was that she filled in the note completely on the typewriter and delivered it to Beckett on August 15, 1956 and he returned it to the company's office with the signatures on August 16, 1956.

Should we accept all the statements of the appellees as truth, we are driven to conclude that although they had little education and were poor readers, they were aware of the import of their act and obligation, since this was not their first experience in borrowing money and signing a note; and that had they chosen to do so, they could have filled in the amount of the note. That by voluntarily placing in Beckett's hands the blank note, they gave to him the apparent authority to fill it in in such an amount as he saw proper: See *Simpson's Executor v. Bovard*, 74 Pa. 351 (1873).

Since the cause of the imposition on the appellant was due to appellee's want of prudence, the appellant owed the Boyds no duty of any kind: *Jeffers v. Gill*, 91 Pa. 290 (1879). The conduct of Ernest Beckett at the November meeting with the company indicated a ratification of Beckett's act, the appellees at no time charging the appellant with any misconduct.

As has been stated in a long line of cases, where one of two innocent persons must suffer loss by reason of the fraud of another, the loss must fall on him, by whose act the wrongdoer has been enabled to commit the fraud: *Gramigna et al. v. Board of Ministerial Pensions and Relief of United Presbyterian Church of North America*, 330 Pa. 335, 199 A. 177 (1938).

The order of the court below is reversed.